IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Denise DiVetro, | ) | Civil Action No.: 4:13-cv-01878-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| The Housing Authority of Myrtle Beach, and GEM Management, | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Denise DiVetro filed this action for declaratory and injunctive relief against Defendants the Housing Authority of Myrtle Beach ("MBHA") and GEM Management pursuant 42 U.S.C. § 1983 on July 9, 2013. Compl., ECF No. 1. Plaintiff's claim specifically alleges a violation of her Fourteenth Amendment procedural due process rights arising from the termination—allegedly without notice and an opportunity to be heard—of a rental assistance subsidy that the Plaintiff received as part of her residing in a public housing project.[1] She claims that the termination of the subsidy ultimately contributed to her eviction from her apartment. Plaintiff now moves for a preliminary injunction from the Court pursuant to Rule 65 of the Federal Rules of Civil Procedure, seeking an order reinstating Plaintiff's tenancy and to restore her rental subsidy during

---

[1] As a preliminary matter, the Court has some concern with Plaintiff's framing of this action as, in part, an action to restore her rental assistance subsidy because Plaintiff has alleged that the subsidy is a *federal* subsidy. She has named no federal agency or federal official as a party to this case. This order should, therefore, be read for what it means: that Defendants have failed to meet *their* burdens under Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure. Despite the Court's denial of Defendants' motions, questions remain about the injury Plaintiff alleges was caused by Defendants. These questions are critical because their answers determine the propriety and scope of the injunctive relief Plaintiff seeks in this matter. Indeed, the evidence suggests that the termination of the rental assistance subsidy is not the immediate injury to Plaintiff, but was rather the natural consequence of the non-renewal of Plaintiff's lease, in which she had an established property interest. The Court admonishes the parties to thoroughly consider and narrow these issues prior to the trial on the merits.

the pendency of this action. Mot. for Prelim. Inj., ECF No. 25. Defendants responded to Plaintiff's motion and filed both a motion to dismiss and a motion for summary judgment pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure, respectfully. ECF Nos. 30, 31, 32. Plaintiff responded to Defendants' motions. ECF Nos. 36, 37. A hearing was held on each of the motions on June 3, 2014, and the motions are before the Court.[2] After considering the arguments and evidence presented by the parties, the Court finds Defendants' motion to dismiss and motion for summary judgment must be denied. Furthermore, as the Court will explain in more detail below, Plaintiff's motion for a preliminary injunction shall be held in abeyance and consolidated with a trial on the merits.

## FACTUAL BACKGROUND

On June 23, 2011, Plaintiff signed a one-year lease to rent an apartment at Halyard Bend Apartments, a complex owned by MBHA and managed by GEM Management in Horry County, South Carolina. The Halyard Bend Apartments complex is a multi-family housing project purchased with financing provided by the United States Department of Agriculture ("USDA"). The USDA's Rural Development program provides funding to borrowers (here, Defendants), who, in turn, lease housing to qualified tenants. Those tenants, moreover, may qualify for assistance subsidies from the USDA for rent and utilities. The amounts of those subsidies are determined after an annual certification, where factors such as income and family size are assessed. The lease that Plaintiff signed indicated that her note rent[3] was $658 per month; however, Plaintiff was initially

---

[2] In addition to the motions of the parties, the Court *sua sponte* raised jurisdictional concerns, requesting that the parties be prepared at the hearing to argue the applicability of the *Rooker-Feldman* doctrine.

[3] "Note rent" is the amount of rent determined by the borrower (and approved by the USDA) to cover the costs associated with financing and managing the multi-family complex.

2

approved for rental assistance that reduced her rent to $199 per month. She paid that amount until her next certification in January 2012, when Plaintiff's subsidy was increased to an amount that effectively lowered her monthly rent to $0 per month.[4] Also as a result of this recertification, Plaintiff's lease was renewed for another one-year term, set to expire at the end of January 2013.[5]

Not long after she moved into the unit did Plaintiff begin to receive written warnings from apartment management. The first was a warning in August 2011 that two dogs were observed at her apartment, a violation of occupancy rules. Next was a warning citing her children's disruptive behavior in February 2012, also a violation of the rules. Other violation warnings cited a rabbit in her closet and an unregistered, non-operable vehicle on the property. On August 30, 2012, Plaintiff was informed that an associate of hers had been barred from visiting her on the property. As a result of these violations, GEM Management informed Plaintiff, by way of a November 9, 2012 letter, that her lease would not be renewed for another one-year term. She was told to vacate the premises by the end of January 2013 and notified of her rights to defend an eviction in court. Despite the demands that she vacate the premises, however, Plaintiff did not leave, and in a March 3, 2013 form letter, Plaintiff was informed that she had failed to pay rent for the months of February and March.[6] The letter indicated that she was $1,316 in arrears and that a failure to pay the balance by March 15 would lead to a termination of her lease the following day. Plaintiff was thus treated as a month to month tenant (at $658 per month) without having an opportunity to contest the lease violations alleged by Defendants. Still maintaining that her rental assistance subsidy covered the note rent entirely, however, Plaintiff did not pay any rent.

---

[4] Plaintiff also received a utility subsidy that provided a net $13 to her each month.

[5] As the Court shall explain further below, a borrower may only terminate a lease at the end of a lease period under certain conditions. *See* 7 C.F.R. § 3560.159(b).

[6] Upon the termination of the lease, Plaintiff no longer qualified for rental assistance.

3

An application for ejectment was filed in Horry County magistrate's court on March 25, 2013. The form application listed two grounds as reasons for the writ of ejectment: "The tenant fails or refuses to pay the rent when due or when demanded" and "The term of tenancy or occupancy has ended."[7] That same day, the magistrate issued a rule to vacate or show cause to Plaintiff, notifying her of the same reasons. A trial was held on April 11, 2013, and the magistrate found that Plaintiff had failed to pay rent and issued a writ of ejectment.[8] Plaintiff moved to stay the eviction; however, the amount of the undertaking was contested when Plaintiff continued to assert at an April 29 hearing that her rent was not $658 per month. Instead, Plaintiff contended that her rent was -$13 because of the rental and utility subsidies. The magistrate again rejected her arguments and again found that she owed $658 per month for the months of February, March, and April. Unable to pay rent, Plaintiff was evicted from her apartment on May 15, 2013. This action was subsequently filed on July 9, 2013.

In addition to filing this § 1983 action, however, Plaintiff appealed the judgment of the magistrate to a South Carolina circuit judge on April 15, 2013, as provided by South Carolina law. Before the circuit judge, Plaintiff moved to modify the undertaking[9] and for a preliminary injunction. In a brief to the circuit judge, Plaintiff argued that her procedural due process rights were violated when her rental assistance subsidy was terminated without notice and an opportunity

---

[7] On the form application was a third ground for ejectment that was unchecked: "The terms or conditions of the lease have been violated as follows." The third option included space on the form for the applicant to list the lease violations. All three grounds together track the grounds for ejectment provided by section 27-37-10 of the South Carolina Code.

[8] According to Plaintiff, she moved to dismiss the application at the trial because Defendants "had not proved that they had good cause to terminate [her] subsidy and charge [her] fair market rent." The magistrate denied the motion. Aff. of Denise DeVitro 2, ECF No. 25-2.

[9] An "undertaking" equals the amount of rent owed and is a prerequisite for the magistrate's stay of the eviction.

4

to be heard. The circuit judge denied both motions on July 29, 2013. Subsequently, after an October 2, 2013 hearing in which Plaintiff again alleged procedural due process violations, the circuit judge dismissed the appeal on November 1. The basis for his dismissal of the appeal was an absence of a final order on file with the court and the magistrate's failure to issue a return in order to establish a record of the proceedings below. When Plaintiff moved for a reconsideration of the circuit judge's dismissal, the circuit judge ordered the magistrate to issue a return, holding the motion in abeyance. At the time of the June 3 hearing before this Court, the magistrate had still not issued a return despite the circuit judge's order.[10]

## LEGAL ANALYSIS

### I. Jurisdiction Under the *Rooker-Feldman* Doctrine

Both Plaintiff and Defendants have raised several issues in their respective motions; however, because the Court has *sua sponte* raised jurisdictional concerns, the Court must first determine whether it has jurisdiction to hear this action. Specifically, the Court ordered the parties to address whether the Court has jurisdiction in light of the *Rooker-Feldman* doctrine. In accordance with the Court's notice, the parties did so at the June 3 hearing. Plaintiff argued that this action is separate from the eviction proceedings before a South Carolina magistrate. She characterizes this action as a separate violation of her procedural due process rights when Defendants terminated the rental assistance subsidy at the end of January 2013 and increased her rent without any notice or opportunity to be heard on the alleged violations. Defendants, on the other hand, argue that this § 1983 action is inextricably intertwined with the eviction proceedings, noting that the same procedural due process arguments were made in the state court proceedings.

---

[10] The parties further informed the Court in a June 27, 2014 letter that the magistrate had not issued the return. Joint Ltr. of June 27, 2014, ECF No. 49.

5

The *Rooker-Feldman* doctrine traces its genesis to *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). The Supreme Court found that, by federal statute, only it could exercise appellate jurisdiction over final state court judgments. *Id.* at 416. The Court applied the doctrine again in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and most recently clarified it in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). In *Feldman*, the Court held that the allegations of a complaint were "inextricably intertwined" with state court decisions rendered after *judicial* proceedings—enough to bar the Plaintiffs from bringing claims in federal court. 460 U.S. at 486–87. In *Exxon Mobil*, the Court, after some confusion in the lower courts, clarified that the doctrine "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U.S. at 284. After *Exxon Mobil*, the Fourth Circuit explained that the *Rooker-Feldman* doctrine is applicable only when a Plaintiff challenges a state court decision. *Davini v. Va. Dep't of Transp.*, 434 F.3d 712, 718–19 (4th Cir. 2006). Despite the fact that the *Davini* plaintiff had brought similar claims in federal court after losing in state court, the Fourth Circuit found his claims were "independent" because they sought redress for an injury caused by the defendants, not the state court. *Id.* at 719. The focus of a *Rooker-Feldman* analysis, therefore, is on the injury that Plaintiff asks this Court to redress. "[I]f the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, 'inextricably intertwined' with the state-court decision, and is therefore outside of the jurisdiction of the federal district court." *Id.*

Here, Plaintiff claims that her injury was caused by Defendants' actions, not by the South Carolina magistrate's writ of ejectment. It follows that the *Rooker-Feldman* doctrine does not bar this action entirely. Specifically, the injury alleged by Plaintiff was the termination of Plaintiff's

6

rental assistance subsidy (deriving from Defendants' non-renewal of the lease), which Plaintiff alleges occurred as a result of Defendants' failure to give her an opportunity to be heard on the alleged lease violations. At the same time, however, Plaintiff's request that the Court reinstate her tenancy would amount to a complete reversal of the magistrate's writ. Indeed, it was the writ that directly led to Plaintiff's eviction. *See Smalley v. Shapiro & Burson, LLP*, 526 F. App'x 231 (4th Cir. 2013) (" 'The injur[ies] alleged by [Appellants] in all of these allegations [are] a direct result of the judicial order and fail[ ] to assert an 'independent claim' that would bring the case outside the ambit of *Rooker-Feldman*.' " (citing *Reguli v. Guffee,* 371 F. App'x 590, 596 (6th Cir. 2010)) (alterations in original)). Thus, to that end, the Court finds that the *Rooker-Feldman* doctrine is partially applicable to Plaintiff's claim; however, the doctrine is only applicable to the extent that Plaintiff seeks *reinstatement of her tenancy*. Enjoining Defendants to do so, even in light of Plaintiff's claims alleging injury by the Defendants, is tantamount to a review for error and reversal of the final judgment of the magistrate—after a judicial proceeding. Plaintiff must not be able to couch an injury directly caused by a state court as one caused by the Defendants in order to circumvent the bars to this Court's jurisdiction. The Court's finding that Plaintiff's claim is not fully barred, however, requires further consideration of the other issues raised by this Court and the parties.

## II.     Defendants' Motion to Dismiss

Defendants filed a motion to dismiss the action under 12(b)(6) of the Federal Rules of Civil Procedure. Their only argument is that the Defendants are not proper "persons" under 42 U.S.C. § 1983.[11] Specifically, they contend that "Plaintiff makes no allegation that any person has violated

---

[11] 42 U.S.C. § 1983 provides as follows:

7

any federally recognized right," citing caselaw for the proposition that "inanimate objects such as buildings, facilities, and grounds are not 'persons' and do not act under color of state law." Memo. in Supp. of Mot. to Dismiss 2–3, ECF No. 32-1.  Plaintiff, however, points out that MBHA is a "quasi-municipal, quasi-corporate" organization and that GEM Management is acting on behalf of MBHA.  She argues that courts have long-recognized "a cause of action pursuant to 42 U.S.C. § 1983 when a housing authority has violated a federal housing program participant's due process." Memo. in Opp. to Mot. to Dismiss 5–6, ECF No. 37.

Rule 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted."  The purpose of such a motion is to test the sufficiency of a plaintiff's complaint. *See Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012).  Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  While this standard "does not require 'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Rather, to survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Walters*, 684 F.3d at 439 ("[W]hile a plaintiff does not need to

---

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.' " (quoting *Twombly*, 550 U.S. at 570)). Finally, when ruling on a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

After a review of Plaintiff's complaint, the Court finds that Plaintiff has adequately alleged that Defendants are not inanimate objects under § 1983. The cases cited by Defendants regard actual inanimate objects that are named by the plaintiffs, such as jailhouses or school buildings. Plaintiff, however, has named *entities* in this action. MBHA is "a federally-funded state public housing agency," and GEM Management "is a management agent of Defendant MBHA." Compl. ¶¶ 9–10. Defendants, therefore, cannot plausibly be deemed inanimate objects under the facts alleged. Indeed, Defendants cite the Supreme Court's opinion in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690 (1978), which held that the term "person" under § 1983 includes municipalities and other local government units. MBHA, as a public housing authority, falls within that category of persons recognized by *Monell*.[12] Furthermore, private corporations performing services on behalf of a public entity, are amenable to suit under § 1983. *See Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 723–26 (1961); *cf. Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982) (applying the holding from *Monell* to private corporations). Accordingly, because the allegations of Plaintiff's complaint support the fact that Defendants are not inanimate objects, Defendants' motion to dismiss must be denied.

---

[12] Courts within the Fourth Circuit have routinely presumed public housing authorities to be amenable to suit under § 1983. *See, e.g.*, *Caulder v. Durham Hous. Auth.*, 433 F.2d 998 (4th Cir. 1970); *Daniels v. Hous. Auth. of Prince George's Cnty.*, 940 F. Supp. 2d 248 (D. Md. 2013); *Farmer v. Wilson Hous. Auth.*, 393 F. Supp. 2d 384 (E.D.N.C. 2004).

**III.    Defendants' Motion for Summary Judgment**

Defendants also move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. In their motion, they raise several grounds for this Court's entry of judgment in their favor. While many of their defenses are inapplicable to the facts alleged in this action,[13] Defendants argue that the undisputed and material facts demonstrate that Plaintiff's procedural due process rights were not violated when Defendants did not renew her lease and subsequently evicted her from her apartment. Specifically, they contend that they followed all procedures required by due process and federal regulations. Memo. in Supp. of Mot. for Summ. J. 5–8, ECF No. 31-1. In addition to their argument on the merits, Defendants maintain that Plaintiffs claim is barred by the doctrine of res judicata.[14] *Id.* at 11. Plaintiff responded to these arguments. Because the Court finds

---

[13] In addition to repeating the argument they make in their motion to dismiss, Defendants argue, albeit in a summary fashion, that they are entitled to qualified immunity, entitled to Eleventh Amendment immunity, and not liable under state law or any theories of vicarious liability, respondeat superior, or supervisory liability. First, for the same reasons discussed by the Court in denying Defendants' motion to dismiss, Defendants fail to demonstrate that they are inanimate objects that are not considered "persons" under § 1983. Second, qualified immunity and Eleventh Amendment immunity are inapplicable to Defendants. They have presented no evidence that they are individuals or arms of the state of South Carolina entitling them to such immunity. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("The doctrine of qualified immunity protects *government officials* 'from liability for *civil damages* . . . .' " (emphasis added) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))); *Sallie v. Tax Sale Investors, Inc.*, 998 F. Supp. 612, 621 (D. Md. 1998) ("[I]t cannot be expected that the Supreme Court will allow a *private business corporation,* as distinct from its *officers and employees*, to claim the benefits of qualified immunity."); *Bland v. Roberts*, 730 F.3d 368, 389–90 (4th Cir. 2013) ("[Eleventh Amendment immunity "protects 'state agents and state instrumentalities,' meaning that it protects '*arms of the State*' and *State officials*." (emphasis added) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977))). Third, Defendants' argue that they are not liable under state law; however, Plaintiff only avers a single, federal claim against Defendants. Finally, Plaintiff never alleges that Defendants are liable as a result of any theories of vicarious liability, respondeat superior, or supervisory liability. Plaintiff, instead, alleges they are directly liable under *Monell*. Accordingly, the Court need not address these arguments any further.

[14] The Court ordered the parties to submit supplemental memoranda further addressing the applicability of the doctrine of res judicata, as well as whether the abstention of this Court is appropriate given the ongoing state proceedings. *See* ECF Nos. 41, 43, 44. The Court will further

a genuine dispute of fact exists about whether Plaintiff's procedural due process rights were violated, the Court denies Defendants' motion for summary judgment. Memo. in Opp. to Mot. for Summ. J. 12, ECF No. 36.

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine dispute for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or by "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

To prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine dispute as to any material fact and (2) that he is entitled to judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or

---

address the application of the doctrine of res judicata below.  As for abstention, the only abstention doctrine asserted by Defendants is the doctrine recognized in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).  After further consideration of the parties' arguments regarding the application of the *Colorado River* abstention doctrine, both in their memoranda and at the hearing, the Court finds abstention inappropriate. Indeed, "[t]he threshold question in a *Colorado River* inquiry is whether the pending state and federal suits are parallel." *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 463 (4th Cir. 2005). State and federal actions are parallel "if substantially the same parties litigate substantially the same issues in different forums." *Id.* at 464.  In light of this Court's ruling below that the application of res judicata is inappropriate, the Court declines to surrender jurisdiction of this action under *Colorado River*. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983).

nonexistence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id*. at 257. In determining whether a genuine dispute has been raised, a court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962). The existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand a summary judgment motion. *Id*. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc'n Satellite Corp*., 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

The Court first turns to Defendants' res judicata argument. Defendants argue that the doctrine of res judicata should bar Plaintiff's § 1983 claim because she had previously been heard by both the magistrate and the circuit judge on the same procedural due process issues. Plaintiff, on the other hand, contends that the magistrate did not have the jurisdiction to adjudicate a § 1983 cause of action arising from the alleged violation of her procedural due process rights.

In deciding whether the doctrine of res judicata precludes this particular action, this Court must apply the law of South Carolina. *O'Reilly v. Montgomery Cnty. Bd. of Appeals*, 900 F.2d 789, 791 (4th Cir. 1990). In South Carolina, for res judicata to act as a bar, a party must generally prove: "(1) identity of the parties; (2) identity of the subject matter; and (3) adjudication of the issue in the former suit." *Judy v. Judy*, 712 S.E.2d 408, 412 (S.C. 2011). The South Carolina Supreme Court has declined to "define a single standard," however, "[b]ecause a determination of whether *res*

*judicata* precludes a subsequent suit cannot be reduced to a formulaic process." *Id.* at 414. Instead, the court recognizes a "conceptual framework" for applying the doctrine. *Id.* "Res judicata bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties." *Plum Creek Dev. Co. v. City of Conway*, 512 S.E.2d 106, 109 (S.C. 1999). In other words, " '[a] litigant is barred from raising any issues which were adjudicated in the former suit and any issues which might have been raised in the former suit.' " *Id.* (quoting *Hilton Head Center of S.C., Inc., v. Public Service Comm'n of S.C.*, 352 S.E.2d 176, 177 (S.C. 1987)). The "fundamental purpose" of the doctrine "is to ensure that 'no one should be twice sued for the same cause of action.' " *Judy*, 712 S.E.2d at 414 (quoting *First Nat'l Bank of Greenville v. U.S. Fid. & Guar. Co.*, 35 S.E.2d 47, 56 (1945)). In this context, a "cause of action" means the " 'underlying facts combined with the law giving the party a right to a remedy of one form or another based thereon.' " *Plum Creek*, 514 S.E.2d at 110 (quoting 50 C.J.S. *Judgment* § 749 (1997)).

Plaintiff arguably had the opportunity to raise the issues she now raises to the magistrate at the April 11, 2013 trial. Indeed, it appears she did so by way of a motion to dismiss; however, the mere fact that she had the opportunity to raise the issue defensively—in an effort to show cause for remaining in her apartment after having not paid rent—does not bar her claim under § 1983 for declaratory and injunctive relief to redress the alleged violations of her due process rights. To put it simply, there is no undisputed evidence that Plaintiff is suing Defendants a second time for the same cause of action—the "fundamental purpose" the res judicata doctrine in South Carolina. Furthermore, there is no undisputed evidence showing that Plaintiff had the opportunity to bring her § 1983 cause of action before the magistrate, who had before him the eviction by way of an application for ejectment filed by Defendants. Defendants have not argued specifically that actions

13

for declaratory and injunctive relief of the kind sought by Plaintiff fall within the limited jurisdiction of the magistrate, and this Court is unaware of any provision or rule giving a magistrate such jurisdiction. *See Judy*, 712 S.E.2d at 412 (recognizing that a party's failure to raise a claim to a court without jurisdiction does not bar a party from raising the claim in a subsequent action). The Court finds, therefore, that Defendants have failed to meet their burden of showing that the doctrine of res judicata precludes Plaintiff from asserting her § 1983 claim.

Defendants next argue that their actions never rose to the level of a constitutional violation and that Plaintiff never suffered an infringement of her Fourteenth Amendment procedural due process rights. Specifically, they argue that Plaintiff was given adequate notice of her lease violations as a basis for the non-renewal of her lease and that South Carolina's eviction procedures provided her adequate due process. Moreover, they contend that Plaintiff's alleged procedural due process rights are premised on Supreme Court and Fourth Circuit caselaw that predates the current USDA regulatory scheme, which they maintain that they complied with—that those cases no longer apply.[15] They emphasize that the requirement that due process be given *prior* to the termination or non-renewal of a lease "would paralyze affordable housing acquisition" because "[n]o tenants could ever be evicted without great time and expense." Memo. in Supp. of Mot. for Summ. J. 7. In her response, Plaintiff argues that Defendants never gave her an opportunity to contest the underlying

---

[15] Defendants specifically argue as follows:

> Plaintiff's reliance on *Goldberg v. Kelly*, 397 U.S. 254 (1970), *Caulder v. Durham Housing Authority*, 433 F.2d 998 (4th Cir. 1970) and *Joy v. Daniels*, 479 F.2d 1236 (4th Cir. 1973) is misplaced. The regulations governing the Department of Agriculture's rural housing service became effective February 24, 2005 and remained in effect throughout Plaintiff's occupancy and eviction. Those Cases deal with prior regulations.

Memo. in Supp. of Mot. for Summ. J. 7.

14

basis (the lease violations) for Defendants' non-renewal of her lease; it was the non-renewal of the lease which led to the termination of her rental assistance subsidy. She highlights evidence showing that her eviction before the magistrate was for her failure to pay rent for the months of February and March—not on the ground of the lease violations on which Defendants' based the non-renewal of the lease. She contends that she has "produced sufficient evidence to show that there is an issue as to whether Defendant violated Plaintiff's due process rights." Memo. in Opp. of Mot. for Summ. J. 12.

The Court finds that a genuine issue of material fact remains regarding whether Plaintiff's procedural due process rights were violated as a result of Defendants' actions. Indeed, it has long been established by the Fourth Circuit that the beneficiaries of public housing are entitled to avail themselves of the Fourteenth Amendment's Due Process Clause's procedural protections when facing the termination of their leases. *Joy v. Daniels*, 479 F.2d 1236, 1242 (4th Cir. 1974) (applying the holding of *Goldberg v. Kelly*, 397 U.S. 254, 266–71 (1970), to the termination of public housing leases). This is due to the fact, undisputed by the parties, that public housing tenants hold property interests in their leases and their continued occupancy. Plaintiff's property interest in the renewal of her lease and continuation of her rental assistance subsidy accordingly entitles her to the procedural due process protections recognized by the Supreme Court in *Goldberg*[16] and expressly applied to the public housing context by the Fourth Circuit in in *Caulder v. Durham Housing Authority*, 433 F.2d 998 (4th Cir. 1970). The issue before the Court, then, is whether Defendants can show as a

---

[16] In *Goldberg*, the Supreme Court held that the Fourteenth Amendment's Due Process Clause requires (1) timely notice stating the basis for the proposed termination of a benefit; (2) an opportunity by the beneficiary to confront and cross-examine each witness relied upon for the termination; (3) the right of the beneficiary to be represented by counsel; (4) a decision, based solely on evidence adduced at the hearing, in which the reasons for the decision are set forth; and (5) an impartial decisionmaker. 397 U.S. 254, 266–71.

matter of law that they complied with the Fourteenth Amendment's Due Process Clause and the relevant federal regulations in unilaterally non-renewing Plaintiff's lease and, by derivation, her housing assistance subsidy.

Defendants cite federal regulations to support their position that Plaintiff was not entitled to an opportunity to challenge the violations that Defendants deemed material enough to justify a non-renewal of Plaintiff's lease. Memo. in Supp. of Mot. for Summ. J. 6.  Indeed, while the regulations governing the USDA's housing program create a grievance process for tenants of multi-housing projects, the grievance process "does not apply" in situations where the tenant seeks to contest lease violations that "would result in the termination of tenancy and eviction." 7 C.F.R. § 3560.160(b)(2)(v).  Plaintiff cannot genuinely challenge this exemption from the grievance process, and she does not challenge the regulations as being in conflict with basic due process protections. Here, relevant regulations and lease provisions require a borrower to provide a tenant thirty-days' notice to terminate a lease at the end of the lease period. Standard Lease Agreement § 12, ECF No. 31-4; 7 C.F.R. § 3560.159(b) ("A tenant's occupancy in an [USDA]-financed housing project may not be terminated by a borrower when the lease agreement expires unless the tenant's actions meet [specific]conditions . . . or the tenant is no longer eligible for occupancy in the housing.").  In doing so, the borrower must show material non-compliance with controlling rules or good cause.[17]  A

---

[17] 7 C.F.R. § 3560.159(a) explains that "[b]orrowers, in accordance with lease agreements, may terminate or refuse to renew a tenant's lease only for material non-compliance with the lease provisions, material non-compliance with the occupancy rules, or other good causes." Those bases are further defined as follows:

> (1) Material non-compliance with lease provisions or occupancy rules, for purposes of occupancy termination by a borrower, includes actions such as:
>
> (i) Violations of lease provisions or occupancy rules that are substantial and/or repeated;

borrower, moreover, must seek an eviction remedy in state court, *see* S.C. Code Ann. § 27-37-20, and South Carolina's eviction procedures have long been upheld by the Fourth Circuit as providing adequate due process for public housing tenants facing the termination of their housing benefits. *Johnson v. Tamsberg*, 430 F.2d 1125, 1127 (4th Cir. 1970) (finding that, in South Carolina, due process is satisfied because "public housing tenants are not actually ejected until basic due process requisites are satisfied."). The bottom line is that the regulations mandate that a borrower give notice of this remedy in order to provide a tenant with due process in an eviction. Here, the evidence, even in light most favorable to Plaintiff, shows that Defendants complied with federal regulations and the lease *as they were written*: Defendants gave adequate notice of the non-renewal to Plaintiff and ultimately obtained a writ of ejectment from the magistrate.[18]

---

> (ii) Non-payment or repeated late payment of rent or other financial obligations due under the lease or occupancy rules; or
>
> . . .
>
> (2) Good causes, for purposes of occupancy terminations by a borrower, include actions such as:
>
> (i) Actions by the tenant or a member of the tenant's household which disrupt the livability of the housing by threatening the health and safety of other persons or the right of other persons to enjoyment of the premises and related facilities;
>
> (ii) Actions by the tenant or a member of the tenant's household which result in substantial physical damage causing an adverse financial effect on the housing or the property of other persons; or
>
> (iii) Actions prohibited by state and local laws.

*Id.* The lease further defines the bases consistent with the regulations. A full recitation of the bases in the lease, however, is not necessary by the Court at this time.

[18] Defendants were required by the regulations to give notice of the termination and include the following information:

Complying with the lease and regulations is one thing; assuring that Plaintiff receives adequate due process under *Goldberg*, however, is another. Contrary to Defendants' position, *Goldberg* and *Caulder* continue to govern the facts of this case. Here, this Court cannot find that the material facts that support a legal conclusion that Defendants provided Plaintiff with an opportunity be heard on the lease violations are undisputed. Plaintiff has provided sufficient evidence to create the inference that Defendants never gave Plaintiff the opportunity to contest the violations resulting in the non-renewal of her lease, violating the spirit of due process as it is expressed by the Supreme Court in *Goldberg*. The evidence shows that Defendants gave her notice of the violations and the non-renewal of her lease. It shows that Plaintiff was informed that she had the opportunity and "right to defend any court action relating to this lease non-renewal *if such action is brought*." November 9, 2014 Termination Ltr., ECF No. 31-7 (emphasis added). But the evidence also implies that Defendants never gave her that opportunity. A reasonable inference can be made from the application for ejectment presented to the magistrate that, rather than seeking an eviction because the tenancy had ended as a result of the alleged violations and non-renewal of the lease, Defendants brought the eviction action solely because Plaintiff failed to pay rent for the months of February and March 2013. By doing so, Defendants bypassed, among other basic,

---

> (1) A specific date by which lease termination will occur;
>
> (2) A statement of the basis for lease termination with specific reference to the provisions of the lease or occupancy rules that, in the borrower's judgment, have been violated by the tenant in a manner constituting material non-compliance or good cause; and
>
> (3) A statement explaining the conditions under which the borrower may initiate judicial action to enforce the lease termination notice.

7 C.F.R. 3560.159(b). There is no evidence in the record that Defendants' did not follow the regulations when giving notice to Plaintiff on November 9, 2012.

18

constitutional requirements, a decision by an impartial decisionmaker (here, the magistrate) on the evidence that may (or may not) have supported Defendants' grounds for their non-renewal of the lease. The issue regarding the non-renewal of Plaintiff's lease based on the alleged lease violations was not an issue that Defendants affirmatively brought before the magistrate, and Defendants' counsel admitted as much at the hearing before this Court.[19] It is, therefore, the evidence of this end run around Plaintiff's due process protections that requires the Court to deny Defendants' motion for summary judgment.

### IV.     Plaintiff's Motion for a Preliminary Injunction

The Court, finally, turns to its consideration of Plaintiff's motion for a preliminary injunction. In light of the Court's assessment of Plaintiff's § 1983 claim under the *Rooker-Feldman* doctrine—that reinstatement of her tenancy would effectively be a reversal of the magistrate's writ of ejectment thus barred by the *Rooker-Feldman* doctrine—the Court finds that further arguments by the parties are necessary on the motion for a preliminary injunction. Because the April 25, 2014 discovery deadline and the May 12, 2014 dispositive motions deadline have passed, the Court finds consolidation of the motion hearing with a trial on the merits appropriate and shall hold the motion in abeyance. Indeed, Rule 65(a)(2) of the Federal Rules of Civil Procedure provides that "after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing." *See Gellman v. Maryland*, 538 F.2d 603, 604 (4th Cir. 1976) ("[Rule 65(a)(2) wisely permits the district court in an appropriate case to hear a motion for preliminary injunction and conduct a hearing on the merits at the same time.").

---

[19] Plaintiff, moreover, conceded at the hearing that she would not have filed this action if Defendants had applied for a writ of ejectment on the ground that she had violated the lease—the third option on the form application—and presented evidence to the magistrate to support the alleged violations that resulted in the non-renewal of her lease and termination of her subsidy.

19

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion to dismiss is **DENIED**, that Defendants' motion for summary judgment is **DENIED**, and that Plaintiff's motion for a preliminary injunction shall be further held in abeyance and consolidated with a trial on the merits.

**IT IS SO ORDERED.**[20]

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

July 10, 2014
Florence, South Carolina

---

[20] If the parties have not mediated this case, they should do so in light of this ruling. The Court anticipates the trial of this case during its September 2014 term.